# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HEFTER IMPACT TECHNOLOGIES, LLC, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. ) 15-13290-FDS ) |
| SPORT MASKA, INC. d/b/a REEBOK-CCM HOCKEY, | ) ) ) ) |
| Defendant. | ) ) |

## ORDER ON PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS

SAYLOR, J.

This is an action for breach of contract. Plaintiff Hefter Impact Technologies, LLC ("HIT") alleges that defendant Sport Maska, Inc. ("CCM") owes it royalties from the sales certain ice-hockey helmets allegedly based on HIT's designs.

HIT filed a motion for sanctions for spoliation of evidence and discovery misconduct. That motion was granted in part and denied in part. Specifically, the Court held that although sanctions were not warranted, it was nonetheless reasonable under the circumstances for HIT to bring the motion, and the Court ordered CCM to pay HIT's reasonable attorneys' fees and costs related to the motion for sanctions.

HIT has filed an application for fees and costs, requesting a total of $54,152.61. CCM filed a response, contending that HIT is at most entitled to $12,665.46. For the reasons stated below, the Court will award HIT $16,219.83 in fees and costs.

## I. Background

HIT's motion for sanctions for spoliation of evidence and discovery misconduct alleged,

among other things, that CCM (1) destroyed e-mail after being notified of the litigation and (2) wiped the contents of employee Laura Gibson's laptop and discarded her handwritten notes.

The Court ruled that while "CCM's response to the document production request was very far from ideal," the record did "not support a finding that any relevant e-mails were actually destroyed." Mem. & Order on Pl.'s Mot. for Sanctions at 13. With respect to the laptop and notebooks, the Court found that there was at least a cursory effort to ensure that relevant evidence on the laptop was preserved prior to its being wiped, and that there was insufficient evidence to find that CCM acted intentionally to deprive HIT of evidence or that HIT would suffer prejudice.

Nevertheless, the Court found:

> [T]he combination of CCM's failure to preserve the notebooks, its somewhat lackadaisical approach to document production, and its aggressive document destruction policies has created substantial issues in this case. At a minimum, it has complicated the discovery process. Hefter's decision to bring this motion, although not ultimately successful, was an entirely reasonable response under the circumstances.
>
> Accordingly, the sanction that the Court will impose is that CCM will be required to pay the reasonable attorneys' fees and costs HIT incurred in bringing this motion.

*Id.* at 16-17.

HIT submitted an application for fees on August 25, 2017, supported by affidavits from attorneys Giovanni Ruscitti and Giles Krill, a list of time entries, a bill of costs incurred by the firm, and an invoice from the court reporter relating to the September 26-27, 2016 deposition of Laura Gibson.

The time sheets reflect the practice of block billing—that is, each attorney's time entry for a given day contains only the total number of hours spent by that attorney on plaintiff's matter that day and does not break down the time spent on discrete tasks within that matter.

2

Acknowledging this, for each entry reflecting work related to the sanctions motion billed together with other work, plaintiff's counsel has estimated the actual hours spent on the sanctions motion alone and has reduced the charge for that entry accordingly.

In all, HIT seeks $9,520 in legal fees associated with managing discovery disputes and preparing for and taking Laura Gibson's deposition (Ruscitti Aff. Ex. 1 at 28-50); $31,755.50 in legal fees associated with preparing the motion for sanctions (Ruscitti Aff. Ex. 1 at 50-76); $6,497.50 in legal fees associated with preparing the application for fees (Ruscitti Aff. Ex. 1 at 77-78); $6,214.15 costs associated with the Gibson deposition (Ruscitti Aff. Ex. 2 at 3, 6-8); $165.46 in costs associated with filing the motion for sanctions (Ruscitti Aff. Ex. 2 at 5); and an upward adjustment of 20%.

## II. <u>Analysis</u>

### A. <u>Reasonable Attorneys' Fees</u>

In the First Circuit, courts follow the so-called "lodestar" method for calculating reasonable attorneys' fees. *Tenn. Gas Pipeline Co. v. 104 Acres of Land*, 32 F.3d 632, 634 (1st Cir. 1994); *see also Julien ex rel. Hutchinson v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011). The lodestar method involves "multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

In fashioning the lodestar, the first step is to calculate the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *see also Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984) (explaining that a court should subtract "hours which [are] duplicative, unproductive, excessive, or otherwise unnecessary"). "[T]he court has a right—indeed, a duty—'to see whether counsel substantially exceeded the bounds of reasonable

effort.'" *United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 17 (1st Cir. 1988) (quoting *Pilkington v. Bevilacqua¸* 632 F.2d 922, 925 (1st Cir. 1980)).

After determining the number of hours reasonably expended, a court's second step in calculating the lodestar requires a determination of a reasonable hourly rate—a determination that is benchmarked to the "prevailing rates in the community" for lawyers of like "qualifications, experience, and specialized competence." *See Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001). In determining a reasonable hourly rate, a court must consider "the type of work performed, who performed it, the expertise that it required, and when it was undertaken." *Grendel's Den*, 749 F.2d at 951. The moving party bears the burden of establishing an attorney's level of skill and experience, and when that party fails to provide documentation as to the attorney's qualifications, a court may reduce the hourly rate. *See, e.g.*, *Martinez v. Hodgson*, 265 F. Supp. 2d 135, 142 (D. Mass. 2003).

After determining the reasonable number of hours and hourly rate, the court may adjust the lodestar upward or downward based on a number of factors. *Spooner v. EEN, Inc.*, 644 F.3d 62, 68 (1st Cir. 2011). Those factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Diaz v. Jiten Hotel Mgmt.*, 741 F.3d 170, 177 n.7 (1st Cir. 2013) (quoting *Hensley*, 461 U.S. at 430 n.3).

### B. Fees and Costs Incurred Prior to Ms. Gibson's Deposition

In this case, the Court has awarded reasonable fees and costs incurred in connection with

4

the motion for spoliation—that is, plaintiff is entitled to fees and costs that it would not otherwise have incurred in this litigation except for the fact that it had to bring a motion for spoliation. Plaintiff would have deposed Ms. Gibson even if defendant had not destroyed any of the evidence that was the subject of its motion for spoliation sanctions. Indeed, plaintiff did not even learn of the alleged spoliation until that deposition, and only six pages of the 406-page deposition transcript had anything to do with the alleged spoliation. Similarly, plaintiff would have been required to manage discovery in any event. While defendant's conduct during discovery led to the filing of a motion for sanctions, and that filing was a reasonable response to that conduct, the Court ultimately found that the conduct was not sanctionable, and awarded only fees and costs associated with the *extra* work plaintiff did to bring *the sanctions motion itself*. Therefore, the Court will not award fees and costs incurred prior to Ms. Gibson's deposition.

  C.  <u>**Fees and Costs Incurred Preparing the Motion for Sanctions**</u>

  Plaintiff contends that it is entitled to $31,755.50 in attorney's fees related to the motion for sanctions. To support that figure, plaintiff provides time entries for Attorneys Ruscitti (billing at $350/hour), Potter (billing at $300/hour), and Greenleaf (billing at $215/hour). Although many of the time entries describe work on more than one task, plaintiff's counsel has reduced the hours for those entries to estimate the time actually spent on the sanctions motions. According to the records before the Court, the total time those attorneys spent on the sanctions motion comes to 120 hours.

  Defendant does not challenge the rates charged by plaintiff's counsel. Rather, defendant contends that plaintiff's counsel did not deduct enough time spent on other tasks billed in the same entries as work on the motion for sanctions.

  Defendant points to one entry on September 28, 2016, showing six hours of work for:

Travel to Denver and review and legal analysis of 30(b)(6) testimony and outline

> issues for motion for sanctions, consider evidentiary issues for videos and product reviews, outline discovery path going forward, and general follow up regarding status and tasks to complete.

Ruscitti Aff. Ex. 1 at 50. The Court agrees that the time reflected in this entry is not compensable in full. The Court will assume that Mr. Ruscitti spend 0.5 hours outlining issues for the motion for sanctions at his billing rate of $350/hour, for a total of $175 attributable to the motion for sanctions from that time entry, as opposed to $2,100.

Apart from that entry, defendant does not point to any particular time entry it believes should be marked down further; instead, it asserts that "[b]ased on CCM's counsel's review of the relevant entries, only about $25,000 worth of time appears to have been spent by HIT's counsel on the Motion for Sanctions and the related hearing." Def. Response to Pl.'s App. for Fees & Costs at 4. Upon review, the Court determines that Mr. Ruscitti's time entries associated with the hearing should be reduced substantially more than they were. For example, the time entries for July 9, 13, and 14, 2017, show a total of 22.2 hours spent preparing for and attending the hearing on cross-motions for summary judgment, motions to strike, and the motion for sanctions, of which plaintiff's counsel claims 12.6—more than half—were spent on the motion for sanctions. The cross-motions for summary judgment were clearly more complicated and more important than the motions for sanctions, and surely demanded more attention from plaintiff's counsel. The Court will therefore mark these entries down to four hours from 12.6, for a total of $1,400 attributable to the motion for sanctions instead of $4,410.

This brings the total number of hours spent on the motion for sanctions down to 105.9 hours, at best, and the total fees to $26,820.50. That overall time spent appears to be excessive, as counsel appear to have spent nearly three weeks of attorney time on a relatively straightforward motion. The bulk of that time was spent by attorney Greenleaf, who appears to

6

have produced four drafts of the motion for review by the other attorneys. The Court finds that (at most) two weeks of attorney time, or 80 hours, is an appropriate amount of time to spend on a motion for sanctions like the one plaintiff filed here. After the reductions to Ruscitti's time discussed above, approximately two-thirds of the time claimed is attributable to Greenleaf, two-thirds of the remaining time (two-ninths overall) is attributable to Ruscitti, and the rest (one-ninth overall) is attributable to Potter. Therefore, in reducing the time from 105.9 hours to 80 hours, the Court will reduce the fees according to that ratio.[1]

The Court finds that plaintiff has demonstrated that it reasonably spent 80 hours on its motion for sanctions, and that (based on the lack of objection from defendant) the rates charged by the respective attorneys for those hours were reasonable, resulting in a total of $20,230.40 in fees incurred.

Having determined the lodestar amount, the next step is to apply whatever upward or downward adjustment might be appropriate. In this case, a downward adjustment is appropriate. A "preeminent" factor in this determination is the "results obtained." *Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331, 338 (1st Cir. 1997) (citing *Hensley*, 461 U.S. at 432)). The phrase "results obtained" includes a party's "success claim by claim," "the relief actually achieved," and "the societal importance of the right which has been vindicated." *Coutin*, 124 F.3d at 338. Here, plaintiff did not obtain the relief that it sought—namely, sanctions for spoliation. Rather, plaintiff was awarded fees because its "decision to bring this motion, although not ultimately successful, was an entirely reasonable response under the

---

[1] 105.9 hours – 80 hours = 25.9 hours reduction. 2/3 * 25.9 hours = 17.27 hours attributable to Greenleaf, multiplied by her billing rate of $215 = $3712.33 reduction. 2/9 * 25.9 hours = 5.76 hours attributable to Ruscitti, multiplied by his billing rate of $350 = $2014.44 reduction. 1/9 * 25.9 hours = 2.88 hours attributable to Potter, multiplied by her billing rate of $300 = $863.33 reduction. $26,820.50 – $3712.33 – $2014.44 – $863.33 = $20,230.40.

circumstances." Mem. & Order on Pl.'s Mot. for Sanctions at 16. Furthermore, the societal importance of sorting out discovery abuse in a contract dispute is relatively low. As to the other factors, the "novelty and difficulty" of spoliation issues is low, and the skill required to bring such a motion is average. All things considered, a downward adjustment of 33% is appropriate. The Court will therefore award plaintiff $13,554.37 in fees for the motion for sanctions itself.

Plaintiff also incurred $165.46 in photocopying and FedEx costs associated with the motion for sanctions. Ruscitti Aff. Ex. 2 at 5. Defendant does not dispute those costs. The Court will therefore award plaintiff $165.46 in costs associated with the motion for sanctions.

### D. Fees Incurred Preparing the Application for Fees

Unlike the fees incurred prior to Ms. Gibson's deposition, the fees incurred preparing the application for fees would not have been incurred had plaintiff not been forced to file its sanctions motion. Therefore, the award of some fees associated with preparing the fee application are appropriate. However, $6,497.50 is not reasonable. The time sheets indicate that counsel spend a total of 27.6 hours on the fee application. Ruscitti Aff. Ex. 1 at 77-78. But counsel had only to review its time entries, prepare an affidavit, and file a short brief explaining why it deserved those amounts. Those tasks could have been easily completed in less than half the time claimed by plaintiff. The Court will award $2,500 for preparation of the fee application.

## III. Conclusion

For the reasons stated above, the Court awards plaintiff $16,054.37 in fees ($13,554.37 + $2,500) and $165.46 in costs, for a total of $16,219.83.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor, IV
Dated: November 28, 2017                United States District Judge